UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CAIRO MARINE SERVICE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:09CV1492 CDP |
| | ) |
| HOMELAND INSURANCE | ) |
| COMPANY OF NEW YORK, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

The parties have filed motions seeking to join additional parties, to remand to state court, to dismiss due to parallel state proceedings, and for summary judgment on various claims and counterclaims. In this litigation, plaintiff Cairo Marine Service, Inc. and defendant Homeland Insurance Company of New York dispute whether the parties' insurance policy provides coverage for the claims against Cairo in an underlying state case. Both parties have moved for summary judgment on the issue of whether Homeland owes Cairo a duty to defend in the underlying state suit. Cairo has also filed a motion to add a defendant, to remand, and to dismiss this case, while Homeland moves for summary judgment on Cairo's claim of bad faith and seeks to file an additional statement of material facts. For the reasons stated below, I will deny plaintiff's motion to add a defendant in this

case because the party Cairo wishes to join is not an indispensable party. I will deny Cairo's motions to remand and to dismiss because there is no parallel state action. I will grant Cairo's motion for partial summary judgment because the claims against Cairo in the underlying state suit are potentially covered by the parties' insurance policy, and so Homeland owes Cairo a duty to defend. Conversely, I will deny Homeland's motion on the same issue. Finally, I will deny defendant's motion for leave to file an amended statement of material facts as moot.[1]

## Background

Cairo Marine inspects construction equipment. In September of 2007, Cairo inspected and certified a crane in Louisiana. Approximately five months after Cairo's inspection, the crane's counterweight collapsed, crushing a man's legs and pinning him beneath another counterweight. In a separate action, not before this Court, the injured man brought suit against the owner of the crane and against Cairo Marine claiming that the structure of the crane had been altered before Cairo's inspection, that this alteration made the crane unsafe, and that Cairo's

---

[1]The plaintiff in the underlying state case amended his complaint during the pendency of the parties' briefing. After a round of supplemental briefing, both parties agreed that their motions should be considered with respect to the plaintiff in the state case's amended complaint. As a result, all arguments directed to the complaint in the underlying state case refer to the plaintiff's recently filed fourth amended complaint.

inspection should have detected the danger.

The injured man was severely injured by the counterweight. He states that he has "undergone more than a dozen surgeries" including a partial amputation of his foot and that it is "reasonable" that his right leg will be amputated. In Section XXVII, he also states that he "has been diagnosed with post-traumatic stress disorder, anxiety and depression."[2] As a result, he seeks compensation for "severe and permanent injuries to his body and mind" including:

    (1)    Past, present and future physical pain and suffering;
    (2)    Past, present and future mental anguish and emotional distress;
    (3)    Past, present and future medical expenses;
    (4)    Permanent disability;
    (5)    Disfigurement;
    (6)    Lost wages and loss of earning capacity; and
    (7)    Loss of enjoyment of life.

In response to the claims against it, Cairo contacted it's insurer, Homeland. Cairo notified Homeland of the litigation, asserted that the claims against it fell within the coverage of the policy, and requested that Homeland defend and indemnify it in the crane-injury litigation. Homeland denied coverage and refused to defend or indemnify Cairo.

---

[2]The injured man's wife also asserts a claim against Cairo for loss of consortium "as a result of [her husband's] injuries." However, the parties agree that the wife's claim qualifies as a "related claim" under the policy and, if the injured man's claims are not covered, the wife's claims will also not be covered, and vice versa.

Homeland denied coverage based on an exclusion in the policy for "bodily injuries." The Homeland policy is a "Miscellaneous Professional Liability Policy" and states that Homeland will indemnify Cairo for claims against it arising out of "Wrongful Acts," which include "any actual or alleged act, error or omission in the performance of, or any failure to perform, Professional Services," or services performed for a fee. Cairo states that its inspection of the crane was a professional service and Homeland admits that, under the general agreement, the policy would provide coverage for the claims against Cairo in the crane-injury case. However, the policy includes an amended exclusion of claims "for bodily injury, sickness, disease or death of any person, or damages to or destruction of any property, including the loss of use thereof." The amended exclusion is narrower than the original provision, which is listed in the main body of the policy. The original exclusion disclaims coverage for claims "based upon, arising out of, directly or indirectly resulting from . . . or in any way involving bodily injury . . . ." At the time of Cairo's initial request for coverage, Homeland cited the language of the amended exclusion as its basis for its refusal to defend. The policy is stamped on the cover as being "procured and developed under Missouri Surplus Lines Law."

Cairo's insurance broker is the Charles L. Crane Agency Company, a Missouri corporation. Cairo claims that it hired the Crane Agency to obtain full

insurance coverage on its behalf. Consequently, the Crane Agency negotiated and obtained an insurance policy from Homeland.

Homeland removed this action from state court in September of 2009. Cairo attempted to remand the case in October of 2009, but did not give notice that it intended to join the Crane Agency as a party until October of 2010, more than a year later. Cairo now moves to assert a claim against the Crane Agency for negligence and breach of fiduciary duty for failing to obtain full coverage, if this Court finds that Cairo's policy with Homeland does not cover the claims against Cairo in the underlying state suit.

The injured man recently joined Homeland as Cairo's insurer in the crane-injury suit. However, the complaint does not seek a declaratory judgment that Homeland owes Cairo a duty to defend or indemnify and it does not address any claims between Cairo and Homeland, such as Cairo's claim that Homeland denied coverage in bad faith. The only mention of Homeland in the complaint simply states that "[a]t all times relevant to the events of this lawsuit, defendant Homeland Insurance Company was defendant Cairo Marine Service, Inc.'s professional liability insurer." The crane-injury litigation is ongoing and, at present, there has been no determination of Cairo's liability in the matter.

## Analysis

On a motion for summary judgment, the facts and inferences are viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### 1. Joinder, Remand, and Dismissal

Cairo seeks the dismissal or remand of this case on a variety of grounds. It claims that this Court should abstain from hearing this case due to a parallel state proceeding and, alternatively, Cairo seeks to join a non-diverse party that would require dismissal or remand, if allowed. For the reasons stated below, remand and dismissal are not appropriate in this case because there is no parallel state proceeding and joinder of the non-diverse party is not appropriate because the party that Cairo seeks to join is not necessary or indispensable.

This is the second time that Cairo has argued that this Court should abstain from hearing this case due to a parallel state proceeding. I denied Cairo's first motion on this issue because there was no parallel state proceeding and there were

no other factors indicating that abstention was appropriate. Cairo asks that the Court reconsider its previous order because the crane-injury case now qualifies as a parallel state proceeding. When determining whether parallel state action exists, courts consider whether there is parallel state action at the time when the declaratory judgment action was filed. *Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 537-38 (8th Cir. 2009); *Continental Cas. Co. v. Advance Terrazzo & Tile Co., Inc.*, 462 F.3d 1002, 1006 (8th Cir. 2006); *Scottsdale Ins. Co. v. Detco Industries, Inc.*, 426 F.3d 994, 997 (8th Cir. 2005); *but see Royal Indem. Co. v. Apex Oil Co.*, 511 F.3d 788, 794 (8th Cir. 2008). Since there was no parallel action when the declaratory judgment action was filed the first time Cairo raised this issue, it is unnecessary to reconsider my previous decision on this issue, whether or not the crane-injury case has now become parallel.

In addition, the crane-injury case is not a parallel state proceeding, despite Cairo's argument to the contrary. Suits "are parallel if substantially the same parties litigate substantially the same issues in different forums."[3] *Scottsdale*, 426 F.3d at 997; *see also Fru-Con*, 574 F.3d at 535 (stating that "a substantial

---

[3]Under Eighth Circuit precedent, this case would be characterized as a case for declaratory judgment when determining whether abstention is appropriate, even though Cairo also asserts a claim of bad faith. *See Royal Indem. Co. v. Apex Oil Co.*, 511 F.3d 788, 794 (8th Cir. 2008); *Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 878-79 (8th Cir. 2002).

similarity must exist between the state and federal proceedings, which similarity occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims . . . . This analysis focuses on matters as they currently exist, not as they could be modified."). Here, the crane-injury litigation will determine Cairo's liability for a man's physical and emotional injuries, while this litigation will determine whether Homeland must defend Cairo in that suit and whether Homeland denied coverage in bad faith. Despite the fact that Homeland is now a party in the crane-injury case, neither of the claims being litigated in this case are currently at issue in the crane-injury case. In the state suit, there are no declaratory judgment claims against Homeland and no party currently asserts that Homeland owes Cairo a duty to defend and no party asserts a claim against Homeland for bad faith refusal to pay. As a result, there is not a substantial likelihood that the proceedings in the crane-injury case will fully dispose of the claims in this Court. Abstention is not inappropriate.

Cairo also seeks remand of this case as a result of its motion to join the Crane Agency under 28 U.S.C. § 1447(e) and Federal Rule of Civil Procedure 19. These issues are closely related and require the application of similar standards. Section 1447(e) states that if "after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may

deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C.A. § 1447(e). Under § 1447(e), a district court should scrutinize an amendment to add a party under Rule 15 that would destroy jurisdiction more closely than an ordinary amendment. *Bailey v. Bayer CropScience LP*, 563 F.3d 302, 309 (8th Cir. 2009). "[T]he Court is required to consider 1) the extent to which the joinder of the nondiverse party is sought to defeat federal jurisdiction, 2) whether [the] plaintiff has been dilatory in asking for amendment, and 3) whether [the] plaintiff will be significantly injured if amendment is not allowed." *Id.* (quotations omitted). Joinder is required under Rule 19 if the new party is indispensable to a full resolution of the case. *Bailey*, 563 F.3d at 308. Rule 19(a) states that a party is necessary if "in that person's absence, the court cannot accord complete relief among existing parties," or if the absent party's interests will be impaired if they are not joined, or the absent party will be subject to double or inconsistent obligations if they are not joined. Fed. R. Civ. P. 19(a) (West 2010). Under Rule 19 a party is not indispensable "'[w]hen a person is not a party to the contract in litigation and has no rights or obligations under that contract." *Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668, 676 (1st Cir.1994) (quoting 7 Charles A. Wright, Federal Practice and Procedure § 1613 (1986).

Based on these standards, it is not appropriate to join the Crane Agency under § 1447 and the Crane Agency is not a necessary or indispensable party. Cairo knew of the facts giving rise to its claims against the Crane Agency before this litigation began, yet waited more than a year after filing to attempt joinder. The Crane Agency is not a party to the contract at issue and, at best, has a peripheral interest in the outcome of this litigation. In addition, Cairo can completely recover against Homeland without the Crane Agency's involvement and it will be able to recover from the Crane Agency in a separate suit without Homeland's involvement. Therefore, I will deny Cairo's motions on this issue.

### 2. Duty to Defend

Both parties seek to determine whether Homeland owes Cairo a duty to defend and indemnify it in the underlying state litigation. "The duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint." *McCormack Baron Mgmt. Serv., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. 1999). "If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend." *Id.* at 170-71. "This is true even if the petition contains other claims that would not be covered." *Penn-Star Ins. Co. v. Griffey*, 306 S.W.3d 591, 597 (Mo. Ct. App. 2010). "In general, an insurance policy is a contract to afford

protection to an insured and will be interpreted, if reasonably possible, to provide coverage." *Haulers Ins. Co., Inc. v. Pounds*, 272 S.W.3d 902, 905 (Mo. Ct. App. 2008). "[P]rovisions limiting or cutting down, or avoiding liability in the coverage made in the policy are construed most strongly against the insurer." *Crossman v. Yacubovich*, 290 S.W.3d 775, 779 (Mo. Ct. App. 2009). A court "strictly construes exclusionary clauses against the drafter, who also bears the burden of showing the exclusion applies." *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. 2010).

Under prevailing Missouri law, the man's claim for emotional injuries does not fall within the meaning of "bodily injury, sickness, disease or death." The complaint in the crane-injury case states two separate claims – one for a physical injury and one for an emotional injury. The policy only excludes coverage for claims "for bodily injury, sickness, disease or death." This exclusion originally excluded "any claim: based upon, *arising out of, directly or indirectly resulting from* . . . or in any way involving bodily injury, sickness, disease or death." The policy does not define any of the terms "bodily injury," "sickness," "disease," or "death" and none of them unequivocally encompass emotional injuries such as

those suffered by the man in the crane-injury case.[4] Even if the term "bodily" does not modify all of the terms following it in the exclusion, without more, it is at best merely possible that the terms "sickness" and "disease" could be construed to include mental injuries, such as post-traumatic stress disorder. However, given the plain meaning of the terms, it is at least equally probable that they do not. Therefore, reading the policy consistently with a presumption in favor of coverage and the intent demonstrated by the relatively drastic narrowing of the exclusion in the policy's amendment, I find that Homeland has not shown that the bodily injury exclusion removes the injured man's separate claim for his emotional injures from coverage.

However, Homeland argues that Missouri courts have found that, as a matter of law, a provision referring to "bodily injury, sickness, disease, or death" necessarily includes emotional harms arising from a physical injury. Specifically Homeland relies on *Derousse v. State Farm Mut. Auto. Ins. Co.*, 298 S.W.3d 891

---

[4]In a different context, the Missouri Supreme Court has recently found that the "plain meaning" of these words are:
  "bodily": "of or relating to the body"
  "injury": "hurt, damage, or loss sustained"
  "sickness": "the condition of being ill ... a disordered, weakened, or unsound condition ... a form of disease"
  "disease": "an impairment of the normal state of the living animal ... sickness, illness ... a cause of discomfort or harm"
*Derousse v. State Farm Mut. Auto. Ins. Co.*, 298 S.W.3d 891, 895 (Mo. 2009).

(Mo. 2009). In *Derousse*, a woman witnessed a traffic accident that caused her significant emotional injuries, but no physical harm. *Id.* at 892-95. She sought coverage from her insurance company for her emotional harm, but her insurance company denied coverage because it claimed that her policy only provided coverage for physical injuries. *Id.* The court found that the insurance policy was deficient under Missouri law and reformed the contract according to the applicable statute. *Id.* The court then used methods of statutory interpretation to determine that the legislature intended the relevant provision of the Missouri Code to include coverage for both bodily and mental injuries, sicknesses, and diseases. *Id.* As a result, the court found that the woman's emotional injuries were covered by the reformed insurance policy. *Id.*

    *Derousse* does not demand the outcome in this case that Homeland urges. The court in *Derousse* interpreted a statute, using methods of statutory interpretation, according to the intent of the legislature to determine whether the phrase "bodily injury, sickness or disease, including death" covered emotional injuries. *See Derousse*, 298 S.W.3d at 893-95. Here, the policy must be construed in favor of coverage and according the intent of the parties using methods of contract interpretation. In addition, a majority of courts, including Missouri courts, find that, when considered in the context of an insurance contract, the

provision considered in *Derousse* does not cover separate claims for emotional injuries. *See Citizens Ins. Co. of America v. Leiendecker*, 962 S.W.2d 446, 452-53 (Mo. Ct. App. 1998); 9 Lee R. Russ, Couch on Insurance § 126:33 (3d ed. 2010).

Furthermore, the phrase interpreted in *Derousse* is broader than the phrase in this case. The court in *Derousse* found that there were three types of injury listed in the provision – bodily injury, sickness, and disease. *Id.* at 895. The court found that this provision covered emotional injuries, in part, because the types of injuries listed became broader throughout the sequence from "bodily injury," which is relatively narrow, to "disease," which could refer to a variety of mental or physical ailments. *Id.* Notably, the court did not include death as a type of injury in the provision, as it is listed only as an example of a possible result of a bodily injury, sickness, or a disease. *See id.* Here, however, death is included in the direct sequence of the types of injuries that are excluded. In the parties' policy, the terms sickness and disease are listed in a direct sequence between bodily injury and death, indicating that the sickness and disease listed in the exclusion refer to those that could cause death. Therefore the sequence does not become less specific throughout the sequence, but instead is bound from beginning to end by injuries that begin with physical harm and end in death. Emotional injuries such as post-traumatic disorder and depression do not cause death, without additional

harmful interference. Therefore, even without the presumption in favor of coverage, the context of the exclusion indicates that the parties intended to limit the exclusion to physical injuries and ailments. As a result, Homeland owes Cairo a duty to defend in the crane-injury suit.[5]

### 3. Bad Faith

Homeland moves for summary judgment on Cairo's claim that Homeland refused to defend and indemnify Cairo in bad faith. Cairo does not oppose Homeland's motion. Generally, an insurer may insist on a judicial determination of an open question of law or fact without being subject to a claim for bad faith denial of coverage. *Columbia Mut. Ins. Co. v. Epstein*, 236 S.W.3d 667, 675 (Mo. Ct. App. 2007). However, if there is evidence that "the insurer's attitude was vexatious and recalcitrant," it may be subject to a bad faith claim, regardless of whether there is an open question of law or fact. *Id.*

The dispute over whether the injured man's claims were excluded by the bodily injury endorsement provided an open question of law, therefore, Homeland is only subject to a claim for bad faith if there is some evidence that its attitude was vexatious and recalcitrant. According to the parties' submissions, Homeland

---

[5]As stated in my order dated January 10, 2011, the issue of Homeland's duty to indemnify will be addressed after further factual development.

responded to Cairo's request for coverage and other communications promptly, usually within a week or two, and it explained its reasoning for denying coverage thoroughly in each correspondence. Cairo has not provided any evidence other than Homeland's refusal to provide coverage indicating that Homeland's actions were recalcitrant or vexatious. As a result, I will grant summary judgment to Homeland on Cairo's bad faith claim.

### 4. Leave to File An Additional Statement of Undisputed Facts

Homeland seeks leave to file an additional statement of undisputed facts that deals specifically with the claims that Cairo seeks to assert against the Crane Agency. Because I have determined that the Crane Agency should not be joined in this case, I will deny Homeland's motion as moot

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to add defendant Charles L. Crane Agency Company [#85] is DENIED.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment [#88] is granted as to plaintiff's claim of bad faith and denied in all other respects.

**IT IS FURTHER ORDERED** that plaintiff's motion for partial summary judgment [#91] is GRANTED. The Court declares that Homeland Insurance owes

Cairo Marine a duty to defend under the terms of their insurance contract for the claims brought against Cairo Marine in the underlying state proceeding.

**IT IS FURTHER ORDERED** that defendant's motion to file its statement of additional uncontroverted material facts [#104] is DENIED as moot.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 10th day of May, 2011.