UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CAIRO MARINE SERVICE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-cv-01492-CDP |
| | ) | |
| HOMELAND INSURANCE COMPANY OF | ) | |
| NEW YORK | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**CAIRO MARINE SERVICE, INC.'S FINDINGS OF FACT,
CONCLUSIONS OF LAW AND TRIAL BRIEF**

Plaintiff Cairo Marine Service, Inc. files herewith its Findings of Fact, Conclusions of
Law and Trial Brief.

**FINDINGS OF FACT**

1.      Plaintiff Cairo Marine Service, Inc. ("CMS") is an Illinois corporation with its
principal place of business in Jackson, Missouri.  [Pltf- 1 at 2].

2.      Defendant Homeland Insurance Company of New York ("Homeland") is a New
York Corporation with its principal place of business in Boston, Massachusetts. [Doc. 55 -
Homeland's Answer to Amended Complaint for Declaratory Judgment ¶ 2].

3.      Plaintiff CMS is in the business of providing marine survey services and the
inspection and certification of cranes for safety and load testing. [Pltf- 1 at 3].

4.      There is currently pending in the Civil District Court for the Parish of Orleans,
Louisiana a personal injury action styled Ronald Green et al v. Cairo Marine Service Inc. et al,
Case No. 2008-6509. [Herein after referred to as the "Underlying Action"][Pltf- 2].

1

5.     The petitioners in the Green Action are Ronald Green and Elba Green. [Pltf- 2 at I].

6.     The Greens allege that on or about February 27, 2008, Ronald Green was cutting the angle iron on the rear of a crane body and a 37,000 pound center counterweight fell on him, resulting in his left foot being pinned under the weight and his right leg being crushed. [Pltf- 2 at V].

7.     The Greens further allege that Ronald Green remained under the weight for nearly an hour as his co-workers attempted to lift the weight off of him. [Pltf- 2 at V].  The Greens allege that in addition to the unimaginable agony from his injuries, Green was in fear for his life that the other part of the center counterweight system, which was above his body, would fall and crush him to death. [Pltf- 2 at V].

8.     The Greens allege that Ronald Green has sustained severe and permanent injuries to his body and seeks damages for past, present, and future physical pain and suffering, and past, present, and future mental anguish and emotional distress, as well as loss of enjoyment of life. [Pltf-2 at XXXI].

9.     The Greens allege that Petitioner Elba Green is the wife of Ronald Green and that as a result of his injuries the marital relationship has been damaged. [Pltf- 2 at XXXII].  Elba Green seeks damages for her loss of society and consortium. [Pltf-2 at XVII].

10.     The Greens allege their damages were caused in part by the negligence and willful and wanton conduct of CMS and set forth nine allegations of negligence and willful and wanton conduct against CMS. [Pltf- 2 at XXIV(A)(1)-(8)].

11.     Defendant Homeland issued Miscellaneous Professional Liability Insurance Policy No. MPL-0012-08 to CMS with effective dates of June 1, 2008 to June 1, 2009. [Hereinafter referred to as the "Policy"] [Pltf-3].

12.     The Policy is a claims made policy.

13.     CMS was served with a summons and copy of the Petition in the Green Action. [Pltf-1 at 5].

14.     CMS forwarded the suit papers to Homeland and made demand on Homeland to defend CMS in the underlying Green Action. [Pltf-1 at 6].

15.     On or about July 25, 2008, Homeland issued a letter disclaiming coverage for the Green Action under the Homeland Policy. [Pltf-1 at 8; Pltf-4].

16.     Homeland disclaimed coverage for the Ronald Green claim on the basis that Endorsement No. 3 to the Policy excludes from coverage a loss from any claim "for bodily injury, sickness, disease or death of any person …" [Pltf-4 at 3].

17.     Homeland further disclaimed coverage for Elba Green's claim on the basis that any related claim to that of Ronald Green is deemed a single claim, and since Ronald Green's claim is excluded, Elba Green's related claim is excluded. [Pltf-4 at 4].

18.     CMS filed a lawsuit in the courts of the state of Missouri seeking a declaration that Homeland had a duty to defend and indemnify Cairo Marine for the claims brought against it by Ronald and Elba Green.  [Pltf-1 at 13].  Homeland removed the state action to the this court on the basis of diversity jurisdiction.

19.     The Policy contains an Insuring Agreement that provides:

"I.     **INSURING AGREEMENT**

The Underwriter will pay on behalf of the **Insured** any **Loss**, including **Defense Expenses**, which the Insured is legally obligated to pay as a

3

result of any **Claim** that is first made against the **Insured** during the **Policy Period**, …for any **Wrongful Act** committed or allegedly committed…by the **Insured** or any person whose **Wrongful Act** the **Insured** is legally responsible." [Pltf- 3].

20.     Section II of the Policy defines **Claim** as follows:

"II.     **DEFINITIONS**

(B) "**Claim**" means any written notice received by an **Insured**

that a person or entity intends to hold an **Insured** responsible for

monetary damages due to a **Wrongful Act."** [Pltf-3].

21.     Section II of the Policy defines **Defense Expenses** as follows:

(C) "**Defense Expenses**" means reasonable legal fees and expenses

incurred in the investigation, adjustment, settlement, defense or

appeal of a **Claim**…." [Pltf-3].

22.     Section II of the Policy defines **Insured** as follows

(D) "**Insured**" means:

(1)     the individual or entity designated in ITEM 1 of the

Declarations…."  [Pltf-3].

23.     Section II of the Policy defines **Loss** as follow:

(E) "**Loss**" means **Defense Expenses** and any monetary amount

which an in**sured** is legally obligated to pay as damages as a result

of a **Claim**."  [Pltf-3].

24.     Section II of the Policy defines **Professional Services** as follows:

(H) "**Professional Services**" means only those services performed

for others for a fee and which are listed in Item 6 of the

Declarations."  [Pltf-3].

4

25.   Section II of the Policy defines **Related Claims** as follows:

(I) "**Related Claims**" means all **Claims** for **Wrongful Acts** based
upon, arising out of, directly or indirectly resulting from, in
consequence of, or in any way involving the same or related facts,
circumstances, situations, transactions or events, whether logically,
causally in any other way."  [Pltf-3].

26.   Section II of the Policy defines **Wrongful Act** as follows:

(J) "**Wrongful Act**" means any actually or alleged act, error or
omission in the performance of, or any failure to perform,
**Professional Services** by the **Insured**."  [[Pltf-3].

27.   Item 1 of the Declarations lists CMS as the named insured. [Pltf-3].

28.   Item 6 of the Declarations identifies the Professional Services of marine surveying, crane
inspection and certification, OSHA safety training and non-destructive testing services. [Pltf-3].

29.   Section III of the Policy contains exclusions including the following:

"III **EXCLUSIONS**
(B) No coverage will be available under this Policy for **Loss**,
including **Defense Expenses**, from any **Claim**:
        ….
(2) based upon, arising out of, directly or indirectly resulting from,
in consequence of, or in any way involving bodily injury, sickness,
disease or death of any person…."  [[Pltf-3].

30.   ENDORSEMENT NO. 3 to the Policy states:

"AMEND SECTION III EXCLUSION (B)(2) ENDORSEMENT
This Endorsement, effective at 12:01 am on June 6, 2008, forms part of
        Policy No. MPL-00012-08
        Issued to Cairo Marine Service Inc.
        Issued by Homeland Insurance Company of New York.

5

In consideration of the premiums charged, Section III Exclusions (B)(2) of this Policy is amended to read in its entirety as follows:

(2) for bodily injury, sickness, disease or death of any person….

All other terms, conditions and limitations of this Policy shall remain unchanged."  [Pltf-3].

## CONCLUSIONS OF LAW

### A.    Ripeness

1.    The parties have argued that the duty to pay or indemnify arises only after the suit by a third party is successful and the insured becomes obligated to pay the judgment. McCormack Baron Management Services, Inc. v. American Guarantee & Liability Insurance Company, 989 S.W. 2d 168, 173 (Mo. banc 1999).  Since the parties cannot know what facts will be established at trial or whether those facts will fall within the coverage of the policy or trigger policy exclusions, the parties have argued that Homeland's denial of its duty to indemnify is not ripe for ruling at this time.  Id.

2.    CMS has made a demand on Homeland and Homeland contends there are no circumstances under which it can owe CMS any money. The lines are drawn, the parties are at odds, the dispute is real. Homeland is in no different position, in any relevant respect, from that occupied by insurers who deny that coverage exists under their policy for liabilities of their insureds that are contingent or unadjudicated. In those kinds of situations, it is most common for the insurer to bring an action for a declaratory judgment that it will have no duty to indemnify. See Capitol Indem. Corp. v. Miles, 978 F.2d 437, 438 (8th Cir. 1992).  The Eighth Circuit has found declaratory judgment actions justiciable even though facts remain unresolved in underlying, pending litigation so long as the dispute presented is real and immediate, rather than

6

abstract.  Federal Ins. Co. v. Sammons Fin. Group, Inc., 595 F.Supp.2d 962, 972 (S.D. Iowa 2009).

**B.** **Choice of Law**

3.      Missouri courts apply the most significant relationship test as set forth in Restatement (Second) of Conflict of Laws Section 188 when resolving choice of law issues involving contracts.  Sturgeon v Allied Prof'ls Ins. Co., 344 S.W.3d 205, 211 (Mo. App. 2011). In an action between parties to an insurance contract, the principal location of the insured risk is given greater weight than any other single contact in determining the state of applicable law. Id.; Restatement (Second) of Conflict of Laws Section 193.  Comment b to section 193 describes the principal location of the risk as the place where the object or activity which is the subject matter of the insurance, has its principal location, i.e. in the state where it will be during at least the major portion of the insurance period.

4.      The place of contracting is Missouri, where the policy was delivered to CMS. The principal place of CMS' business activity, and where has been during most of the insurance period is Jackson, Missouri.

5.      The court determines that Missouri law applies to the interpretation of the Homeland insurance contract.

**C.** **Duty to Indemnify**

6.      A party seeking to establish coverage under the insurance policy has the burden of proving that the claim is within the coverage afforded by the policy.  M.A.B. v. Nicely, 911 S.W. 2d 313, 315 (Mo. App. 1995).  On the other hand, where the insurance company seeks to escape coverage based on policy exclusions, the burden is on the insurer to establish the applicability of the exclusion.  Id.

7.     Because the insured purchases coverage for protection, the insured is presumed to have obtained the coverage intended, and the policy will be interpreted to grant coverage rather than restrict it.  Penn-Star Ins. Co. v. Griffey, 306 S.W. 3d 591, 596 (Mo. App. 2010).

8.     Provisions restricting coverage are strictly construed against the insurer.  Stark Liquidation Co. v. Florists' Mutual Ins. Co., 243 S.W. 3d 385, 394 (Mo. App. 2007).  When an exclusionary clause is relied upon to deny coverage, its applicability must be clear and free from doubt.  Id.  This is especially true where coverage is first granted and is then followed by a provision limiting or avoiding liability.  Miller's Classified Ins. Co. v. French, 295 S.W. 3d 524, 256 (Mo. App. 2009).

**1.     The claimed damages of Ronald Green and Elba Green are a covered Loss.**

9.     CMS is able to meet its burden that the claims of Ronald Green and Elba Green are within the coverage of the Insuring Agreement.

10.    **"Loss"** broadly **i**ncludes all general and consequential damages including bodily injury, emotional distress, mental anguish, loss of enjoyment of life, personal injury, property damage, loss of business income, lost profits, loss of consortium and loss of services to name a few.  Ronald Green's claim for bodily injury, pain and suffering, emotional distress, mental anguish and loss of enjoyment of life are damages within the definition of "Loss" and to which CMS would be legally obligated to pay as damages.  Similarly, CMS's attorney's fees and expenses are "Defense Expenses" within the definition of "Loss."  These damages arose out of the alleged "Wrongful Acts" of CMS in performing "Professional Services" in the form of the alleged negligent inspection and certification of the crane from which Green suffered his injuries.

11.    The claim of Elba Green is a "Related Claim" in that it arises out of and involves the same related facts and transaction.

8

## 2.     Ronald Green's damages for emotional distress, mental anguish, fear for his life and loss of enjoyment of life are not excluded from coverage.

12.     Endorsement No. 3 can be paraphrased as stating no coverage will be available under the Policy for a "Loss" from any "Claim" "for bodily injury, sickness, disease, or death of any person…."   Homeland interprets the Policy phrase "bodily injury, sickness, disease" to include Ronald Green's claim for emotional distress, mental anguish and loss of enjoyment of life, thereby excluding all of his claims from coverage.   CMS interprets the phrase "bodily injury, sickness, disease" to mean the word "bodily" modifies the words "injury, sickness, disease" thereby limiting the exclusion to physical injury, physical sickness or physical disease. Claims for emotional distress, mental anguish, loss of enjoyment of life, and loss of society and consortium would not be included in this exclusion.

13.     "[T]he interpretation of the contract – not any state law – governs the definition of bodily injury."  Heaker v. Safeco Ins. Co. of Am., 676 F.3d 724, 728 (8th Cir. 2011).

14.     This court previously ruled that Ronald Green's claim for emotional injuries does not fall within the meaning of "bodily injury, sickness, disease or death." [Doc.112 at 11].   As the court explained:

> " The complaint in the crane-injury case states two separate claims — one for a physical injury and one for an emotional injury. The policy only excludes coverage for claims 'for bodily injury, sickness, disease or death.' This exclusion originally excluded 'any claim: based upon, *arising out of, directly or indirectly resulting from* . . . or in any way involving bodily injury, sickness, disease or death.' The policy does not define any of the terms 'bodily injury,' 'sickness' 'disease,' or 'death' and none of them unequivocally encompass emotional injuries such as those suffered by the man in the crane-injury case. Even if the term 'bodily' does not modify all of the terms following it in the exclusion, without more, it is at best merely possible that the terms 'sickness' and 'disease' could be construed to include mental injuries, such as post-traumatic stress

9

disorder. However, given the plain meaning of the terms, it is at least equally probable that they do not. Therefore, reading the policy consistently with a presumption in favor of coverage and the intent demonstrated by the relatively drastic narrowing of the exclusion in the policy's amendment, I find that Homeland has not shown that the bodily injury exclusion removes the injured man's separate claim for his emotional injures from coverage." [Doc 112 at 11-12].

15.    The recent Missouri Supreme Court case, <u>Derousse v. State Farm Mut. Auto. Ins. Co.,</u> 298 S.W.3d 891 (Mo. banc 2009) does not change the result.  "The court in *Derousse* interpreted a statute, using methods of statutory interpretation, according to the intent of the legislature to determine whether the phrase "bodily injury, sickness or disease, including death" covered emotional injuries. *See* <u>*Derousse*, 298 S.W.3d at 893-95.</u>" [Doc. 112 at 13].  "Here, the policy must be construed in favor of coverage and according the intent of the parties using methods of contract interpretation. In addition, a majority of courts, including Missouri courts, find that, when considered in the context of an insurance contract,  the provision considered in *Derousse* does not cover separate claims for emotional injuries. *See* <u>*Citizens Ins. Co. of America v. Leiendecker*, 962 S.W.2d 446, 452-53 (Mo. Ct. App. 1998)</u>; 9 Lee R. Russ, Couch on Insurance § 126:33 (3d ed. 2010)."  [Doc. 112 at 13-14].

16.    "Furthermore, the phrase interpreted in *Derousse* is broader than the phrase in this case. The court in *Derousse* found that there were three types of injury listed in the provision — bodily injury, sickness, and disease. *Id.* at 895. The court found that this provision covered emotional injuries, in part, because the types of injuries listed became broader throughout the sequence from "bodily injury," which is relatively narrow, to "disease," which could refer to a variety of mental or physical ailments. *Id.* Notably, the court did not include death as a type of injury in the provision, as it is listed only as an example of a possible result of a bodily injury, sickness, or a disease. *See id.* Here, however, death is included in the direct sequence of the types

10

of injuries that are excluded. In the parties' policy, the terms sickness and disease are listed in a direct sequence between bodily injury and death, indicating that the sickness and disease listed in the exclusion refer to those that could cause death. Therefore the sequence does not become less specific throughout the sequence, but instead is bound from beginning to end by injuries that begin with physical harm and end in death. Emotional injuries such as post-traumatic disorder and depression do not cause death, without additional harmful interference. Therefore, even without the presumption in favor of coverage, the context of the exclusion indicates that the parties intended to limit the exclusion to physical injuries and ailments." [Doc 112 at 14-15]. *Accord* StarNet Ins. Co. v. Corporate Cash Flow Solutions, 2012 U.S. Dist. Lexis 138915 *29-35 (E.D. Mo. Sept. 27, 2012).

17.    The Court finds Homeland is obligated to indemnify CMS for any emotional injuries, mental anguish and loss enjoyment of life CMS may become obligated to pay in the Underlying Action.

**3.    Elba Green's damages for loss of society and consortium are covered under the Policy.**

18.    Elba Green's claims for loss of society and consortium are "Related Claims" under the Policy in that they are "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events, whether logically, causally in any other way."

19.    The court has determined that Ronald Green's claims for emotional distress, mental anguish and loss of enjoyment of life are covered under the Policy.  To the extent Elba Green's claims for loss of society and consortium arise, directly or indirectly,  out Ronald

Green's emotional injuries they are covered under the Policy and not excluded under Endorsement No. 3.

## TRIAL BRIEF

This court previously determined there is coverage for Ronald Green's emotional injuries under the Homeland Policy [Doc. 112].  As the Eighth Circuit has noted, most declaratory judgment actions relating to the duty to indemnify are resolved by examining the pleadings and comparing the pleadings to the policy language, even though fact issues and contingent liability remain unresolved in the underlying, pending action. *See* Capitol Indem. Corp. v. Miles, 978 F.2d 437, 438 (8th Cir. 1992); Federal Ins. Co. v. Sammons Fin. Group, Inc., 595 F.Supp.2d 962, 972 (S.D. Iowa 2009).  CMS believes the court, in reality, has already determined that Homeland has an obligation to indemnify CMS for any damages the jury may award Ronald Green for emotional injuries he has suffered and to which CMS is obligated to pay.  The court need only enter an order to this effect.

Plaintiff anticipates Defendant will try to introduce medical records from the Underlying Action, as well as expert opinion from medical experts hired by Homeland.  At this point in time no one knows what evidence will come in at the trial in the Underlying Action or how the evidence may be impacted by cross examination.  Homeland is inviting the court to engage in conjecture and speculation as to what the evidence may be and what damages may be awarded.

Further, CMS does not believe it is permissible for Homeland to introduce records and expert opinion in this declaratory judgment action for the purpose of defeating coverage where those same facts and opinions have not been put into evidence in the underlying action.  CMS anticipates counsel will object to the introduction of the medical records or reports in the

12

Underlying Action based on the hearsay nature of the document.  Any opinions or diagnoses expressed in the records have not been subject to cross examination as to foundation or reliability.  The jury does not have to believe or accept the opinions of the health care providers. The court should not allow the introduction of medical records, reports or expert opinions from experts in the Underlying Action or in this declaratory judgment action.

Finally, as stated in <u>Heaker v. Safeco Ins. Co. of Am.,</u> 676 F.3d 724, 728 (8th Cir. 2011), the interpretation of the contract governs the definition of bodily injury, not any state law. To the extent Homeland seeks to argue that Louisiana law should govern the definition of bodily injury, <u>Heaker</u> speaks to the contrary.  Missouri law governs the interpretation of the contract and Missouri law holds that the emotional injuries suffered by Ronald Green are covered under the Homeland Policy.  Homeland is obligated to indemnify CMS for any damages awarded to Ronald Green for emotional injuries, mental anguish and loss of enjoyment of life to which CMS is obligated to pay through judgment or settlement.  Homeland is further obligated to indemnify CMS for the Elba Green's claims for loss of society and consortium that arise, directly or indirectly, out Ronald Green's emotional injuries and to which CMS is obligated to pay..

Respectfully submitted,

ROBERTS PERRYMAN, P.C.

/s/ John L. Walker
Ted L. Perryman, MO 28410
John L. Walker, MO32264
1034 S. Brentwood Blvd., Suite 2100
St. Louis, MO 63117
(314) 421-1850
(314) 421-4346 (Fax)
tperryman@robertsperryman.com
jlwalker@robertsperryman.com
*Attorneys for Plaintiff Cairo Marine Service, Inc.*

13

## <u>CERTIFICATE OF SERVICE</u>

The foregoing has been served upon the Court's electronic filing system this 7th day of May, 2014, to:

Dale M. Weppner, #4687MO
Clark W. Hedger, #5232379
Ryan J. Gavin, #99044
GREENSFELDER, HEMKER & GALE, P.C
10 S. Broadway, Suite 2000
St. Louis, Missouri 63102
Telephone:  (314) 421-1850
Facsimile:  (314) 421-4346
*Attorneys for Defendant Homeland Insurance*
*Company of New York*


/s/ John L. Walker

14